IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA PROLENSKI, DENNIS PACELEY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; <br><br> Plaintiffs, <br><br> v. <br><br> TRANSTAR, LLC;  GARY RAILWAY COMPANY;  UNION RAILROAD COMPANY, LLC; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 21-545 |

## MEMORANDUM OPINION

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 59), Defendants' brief filed in support thereof (Docket No. 60), Plaintiffs' response in opposition thereto and accompanying brief (Docket Nos. 65, 66), and Defendants' reply (Docket No. 70).  Upon consideration thereof and for the reasons set forth herein, the Court will grant in part and deny in part Defendants' motion and will dismiss Plaintiffs' Second Amended Complaint ("SAC") without prejudice.

**I.      Background**

Joshua Prolenski ("Prolenski") and Dennis Paceley ("Paceley") filed an initial complaint in this matter on behalf of themselves and other similarly situated persons on April 23, 2021, wherein they alleged that their employers—Union Railroad Company ("URC") and Gary Railway Company ("GRC"), owned by Transtar, LLC—violated the Employee Retirement Income Security Act ("ERISA") by systematically seeking to terminate employees who were participants in their benefits plan—the Carnegie Pension ("CP").  (Docket No. 1).  Plaintiffs have consistently

alleged that when the CP became unsustainably expensive, Defendants looked for ways to reduce their contribution obligations. After Defendants moved to dismiss Plaintiffs' original complaint, Plaintiffs filed their First Amended Complaint ("FAC") in this matter. (Docket No. 27).[1]

Defendants then moved to dismiss the FAC and argued that the Court should dismiss the claims therein due to a lack of jurisdiction, Plaintiffs' failure to state a claim, and Plaintiffs' failure to plead facts sufficient to support a class action. (Docket No. 29). The Court held oral argument on the motion on March 28, 2023 (Docket No. 45), and granted it in part and denied it in part. (Docket No. 46). The bases of the Court's decision on Defendants' motion were stated from the bench. (Docket No. 51, 3/28/2023 Oral Argument Transcript (hereinafter "OA Transcript")). Before announcing its conclusions, the Court recounted the four issues debated by the parties: (1) whether Plaintiffs' ERISA interference claims were precluded by the Railway Labor Act ("RLA"); (2) whether Plaintiffs' claims were adequately alleged; (3) whether Transtar and then-Defendant United States Steel Corporation should be dismissed from the action because they were not Plaintiffs' employers; and (4) whether the Plaintiffs' class claims were inadequately pleaded and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or stricken pursuant to Rule 12(f). (OA Transcript, pg. 36). The Court considered that the allegations in the FAC described a "scheme to cut costs by targeting Carnegie pension participants for termination of employment" that was effectuated by not following "applicable disciplinary policies" or by "manipulat[ing] those policies and dispens[ing] more demerits to certain people as opposed to others." (*Id.* at 37). The Court also noted that there were allegations in the FAC about Defendants "forcing pension participants to sign last chance agreements in a way that … impacts pension rights" and that Defendants "fail[ed] to timely remove prior demerit issues from the files of certain pension participants." (*Id.*).

---

[1] The Court thereafter denied Defendants' motion to dismiss the original complaint as moot. (Docket No. 28).

After considering Plaintiffs' allegations and the parties' arguments, the Court explained that "the [first] amended complaint [did] not aver any factual allegations that specifically connect[] that scheme or arrangement with the named plaintiffs," and that there were "no averments in the … [first amended] complaint … that plausibly link[ed] this … cost saving strategy that's alleged in a generalized and generic way over the course of multiple years with the purposeful interference with pension benefits, particularly in relation to the two [named] plaintiffs." (*Id.*). Accordingly, the Court decided that the factual averments in the FAC were inadequate to state a plausible claim of ERISA interference and dismissed the claims pursuant to Rule 12(b)(6). (*Id.* at 37-38). The Court, however, dismissed the claims without prejudice and provided Plaintiffs with the opportunity to further amend to cure the defects of the FAC. (*Id.* at 39). With respect to Defendants' argument challenging the Court's subject matter jurisdiction, the Court explained that though Defendants argued that Plaintiffs' claims were "inextricably intertwined with the [Collective Bargaining Agreement ("CBA")] … last chance agreements and other disciplinary rules such as the demerit policies," the Court could not decide that issue on the record presented at the time. (*Id.* at 40). Thus, the Court denied Defendants' Rule 12(b)(1) motion. (*Id.*).[2]

Plaintiffs subsequently filed their SAC. (Docket No. 52). The allegations therein closely resemble the factual averments in the FAC. As in the FAC, Plaintiffs allege in the SAC that from 2011 to 2016 the CP was underfunded at an average level of $1.24 billion, Defendants contributed hundreds of millions of dollars to the CP each year, and Defendants sought ways to significantly reduce the number of CP-participant employees to cut costs. (FAC ¶¶ 80-82; SAC ¶¶ 33-34). Plaintiffs allege that as a result of this unlawful targeting of CP-participants, their number was

---

[2] The Court also dismissed the claims against United States Steel Corporation without prejudice. (*Id.* at 38). The Court later granted United States Steel Corporation's motion to convert this dismissal to a dismissal *with prejudice* and ordered United States Steel be terminated as a party. (Docket No. 54).

3

dramatically reduced from 77,452 employees to just 51,800 employees between 2013 and 2019. (FAC ¶ 84; SAC ¶ 35). Plaintiffs allege that Defendants achieved this sizeable reduction of CP participants in their workforce by issuing more demerits to CP-participants than to non-CP-participants, handing out more than sixty demerits to CP participants for isolated infractions that would normally be handled with a mere verbal or informal warning, threatening CP participants with punishment if they raised grievances, and forcing CP participants to sign last chance agreements that stripped them of procedural protections in their CBAs. (FAC ¶ 85(b)-(e); SAC ¶ 37(a)-(d)). In the SAC, Plaintiffs have also added a vague averment that Prolenski has a 125-employee list showing that "nearly all [CP] members on that list were forced to leave or were fired due to Defendants' manipulation of the demerit system." (SAC ¶ 38). Plaintiffs allege that Paceley can also provide "union documents [that] will show that nearly all [CP] members were forced to leave or were fired due to Defendants' manipulation of the demerit system." (SAC ¶ 39). Plaintiffs also appear to allege that the Defendants implemented their demerits systems and "circumvented the collective-bargaining process entirely" as part of their plan to eliminate CP-participants. (SAC ¶ 40).

With respect to Paceley and Prolenski in particular, Plaintiffs allege that Paceley was hired as a Trainman with GRC and became a remote control operator. (FAC ¶ 95; SAC ¶ 41). Paceley became a CP participant in 2008. (FAC ¶ 96; SAC ¶ 42). Plaintiffs allege that Paceley received demerits that non-CP employees would have never received. (FAC ¶ 97; SAC ¶ 43). In November 2019, Paceley was involved in an incident that resulted in the issuance of sixty demerits and GRC sought his termination. (FAC ¶ 99; SAC ¶ 45). Plaintiffs allege that non-CP employees who were accused of similar rules violations did not receive sixty demerits, and further allege that GRC relied on misstatements of existing operating procedures and "staged photographs" of the incident to

4

issue those demerits. (FAC ¶ 100; SAC ¶ 46). Despite his protestation, GRC terminated Paceley's employment on January 22, 2020, at which time he was approaching "a significant vesting period." (FAC ¶¶ 100-01; SAC ¶¶ 46-47).

Regarding Prolenski, Plaintiffs allege that URC hired him as a trainman in April 2014 and that the following year he became a CP participant. (FAC ¶¶ 102-03; SAC ¶¶ 48-49). Plaintiffs allege Prolenski was given permission to informally take time off to care for his wife who had cancer, but that he was nevertheless issued 100 demerits for lateness. (FAC ¶ 106-07; SAC ¶ 52-53). According to Plaintiffs, employees who were not CP-participants were never issued a "similar number of demerits" for lateness. (FAC ¶ 108; SAC ¶ 54). Later in the course of his employ, Prolenski took FMLA leave related to his own cancer diagnosis. When he returned from leave, he was assessed on a brake test that had been implemented in his absence and he was told he failed the test. (FAC ¶ 110; SAC ¶ 56). Plaintiffs allege that despite there being evidence that Prolenski had not failed the brake test, URC persisted in seeking his termination and in April 2019 he received a letter confirming he had been fired. (FAC ¶¶ 110-15; SAC ¶¶ 56-61). He was approaching his initial vesting period at that time. (FAC ¶ 116; SAC ¶ 62).[3]

Based on these allegations, Plaintiffs accuse Defendants of violating Section 510 of ERISA by discharging, disciplining, and/or discriminating against employees because of their status as CP-participants. (FAC ¶¶ 136-37, 142-43; SAC ¶¶ 74-75, 80-81). Plaintiffs are seeking, *inter alia*, a finding that Defendants violated ERISA; reinstatement of Plaintiffs and similarly situated

---

[3] In support of their class action allegations, Plaintiffs allege a class of all Transtar employees whose employment was terminated because of their status as CP participants. (SAC ¶ 63). They further allege that they believe there are "hundreds of former employees of Transtar, Gary Railway, and Union Railroad who were discharged, fined, suspended, expelled, disciplined, or discriminated against because of their status as participants of the Carnegie Pension." (*Id.* ¶ 65). And they allege that the class members are ascertainable because every member "can be identified from the Transtar Defendants' regularly maintained employee personnel records and/or pension fund records." (*Id.* ¶ 70).

employees with back pay, benefits due under the CP, and other emoluments of employment and relief necessary to wholeness; attorney fees and costs; pre- and post-judgment interest as provided by law; and any other relief to which Plaintiffs or similarly situated individuals are entitled or which the Court deems necessary and proper. (SAC, pg. 14). Defendants have moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(f). Defendants' motion is fully briefed and ripe for disposition.

## II. Standard of Review

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Rule 12(b)(1) challenges to subject matter jurisdiction are either facial or factual. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). "A facial attack … is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Id.* (explaining that factual Rule 12(b)(1) challenges permit consideration of evidence outside the pleadings (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

Under Rule 12(b)(6), a court must accept as true all factual allegations that are contained in the complaint and must construe them in the light most favorable to the plaintiff to determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though a court must accept all factual allegations as true for purposes of a Rule 12(b)(6) motion, that obligation does not extend to legal conclusions even if such a conclusion is "couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Courts in the Third Circuit employ a three-step analysis to evaluate complaints consistent with this standard. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Pursuant thereto, courts first note the elements of a claim. *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, courts eliminate conclusory allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679). And finally, courts assume the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The standard for striking under Rule 12(f) is strict and ... only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting *Becker v. Chicago Title Ins. Co.*, No. Civ. A. 03–2292, 2004 WL 228672, at *6 (E.D. Pa. 2004)).

### III.   Discussion

In their motion to dismiss Plaintiffs' SAC, Defendants raise many of the same arguments they previously offered at Oral Argument concerning their motion to dismiss the FAC. As an initial matter, Defendants argue that Plaintiffs' SAC should be dismissed pursuant to Rule 12(b)(1)

7

because the claims therein are precluded[4] by the RLA, 45 U.S.C. § 151.  Defendants also argue that Plaintiffs' ERISA interference claims should be dismissed pursuant to Rule 12(b)(6) because the factual averments asserted in support thereof are conclusory with respect to (a) there being an alleged scheme to cut costs by terminating CP-participants, and (b) Defendants having specific intent to interfere with Plaintiffs' exercise of rights or receipt of benefits under an ERISA plan.  And lastly, Defendants argue that Plaintiffs' ERISA class-action allegations should be dismissed or stricken under Rules 12(b)(6) and 12(f) for failure to allege facts to support a class action where Plaintiffs would seek to vindicate many URC and GRC terminations arising from a potentially diverse array of circumstances leading to termination.  In opposition Plaintiffs' argue that: the RLA does not preclude their claims; they have adequately alleged ERISA violations; and they have adequately alleged facts to support a class action for a class consisting of CP-participant employees who were terminated as part of Defendants' discriminatory cost-cutting scheme just like Prolenski and Paceley.  The Court will first address Defendants' challenge to its subject matter jurisdiction and will explain why it ultimately is unpersuaded by Defendants' argument for dismissal pursuant to Rule 12(b)(1) before addressing Defendants' Rule 12(b)(6) argument and explaining why the Court agrees that Plaintiffs' SAC fails to cure the deficiencies of Plaintiffs' FAC.

    A.    <u>Plaintiffs' Claims Are Not Precluded by the RLA</u>

Defendants argue that Plaintiffs' claims are precluded by the RLA and that the Court lacks jurisdiction to consider them because doing so will require interpretation of Plaintiffs' CBAs and, under the RLA, "disputes over the application or interpretation of bargaining agreements … if they

---

[4] In *Marsh v. Union R.R. Co., LLC*, Judge Colville addressed the use of the terms "preemption" and "preclusion" in this context.  No. 2:20-CV-01145-RJC, 2021 WL 4459764, at *10 n.8 (W.D. Pa. 2021).  Herein, the Court will refer to Defendants' 12(b)(1) argument as a preclusion argument.  *See id.*

cannot be resolved informally," must be referred to arbitration. *Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 275 (D.C. Cir. 1980) (citing 45 U.S.C. § 184). Defendants cite, *inter alia*, *Malobabich v. Norfolk S. Corp.*, wherein the court determined that the RLA precluded its consideration of an Age Discrimination in Employment Act ("ADEA") claim. No. 2:11-CV-112, 2011 WL 1791306 (W.D. Pa. May 10, 2011). In *Malobabich*, the court explained that the plaintiff's ADEA allegations were "not wholly independent from the CBA"; rather, the plaintiff "contend[ed] that [his employer] committed age discrimination *because it abided by the CBA* seniority rules." *Id.* at *3 (emphasis added). Thus, the court concluded that the dispute was "inextricably intertwined with and require[d] interpretation of the CBA" such that the court lacked subject matter jurisdiction under the RLA. *Id.* Employing the "inextricably intertwined" test, courts have explained that "[c]laims must be dismissed if they require 'an examination into, and interpretation of, the terms of the CBA between a plaintiff's Union and the employer.'" *McCrumb v. Union R.R. Co., LLC*, No. 2:21-CV-718, 2022 WL 4280177, at *5 (W.D. Pa. Sept. 14, 2022) (quoting *Malobabich*, 2011 WL 1791306, at *2).

In Defendants' view, Plaintiffs' ERISA claims must similarly be dismissed because they implicate URC and GRC's CBAs. For instance, Defendants argue that allegations in the SAC that Prolenski was inappropriately issued certain demerits and that other demerits he received were not expunged will require examination of his adherence to CBA report-to-work/notification requirements. (Docket No. 60, pg. 15). With respect to Paceley, Defendants argue the allegations in the SAC will demand inquiry into his apparent derailment of a train[5] and whether he took appropriate steps thereafter, both of which implicate the CBA and its provisions concerning,

---

[5] Defendants have submitted the named Plaintiffs' disciplinary records in support of their argument for dismissal of Plaintiffs' claims pursuant to Rule 12(b)(1). The Court considered these records in its evaluation of Defendants' factual Rule 12(b)(1) argument.

9

among other things, safety and discipline. (*Id.*). Defendants thus contend that Plaintiffs' claims are inextricably intertwined with the CBAs and, accordingly, are precluded by the RLA. (*Id.* at 17-18 (quoting *Malobabich*, 2011 WL 1791306, at *3)).

Shortly after Defendants filed their reply brief (Docket No. 70, entered 9/6/2023), the Third Circuit issued a decision in a case that was discussed at Oral Argument on Defendants' earlier motion to dismiss Plaintiffs' FAC: *Stouffer v. Union R.R. Co.*, LLC, 85 F.4th 139 (3d Cir. Oct. 26, 2023).[6] This decision is highly relevant to the Court's consideration of the RLA preclusion question in this case. In *Stouffer* the Third Circuit considered an age discrimination action under the ADEA of a plaintiff similarly situated to Plaintiffs in this matter who alleged that he was pressured to sign a last chance agreement and was subsequently terminated when a train he was working on ran through a switch, even though a younger employee who was more directly responsible for that incident was not terminated. *Id.* at 143. Addressing the federal courts' subject matter jurisdiction under the RLA, the Third Circuit explained that the RLA does not generally bar independent federal statutory claims, but does preclude any "federal claim that depends for its resolution on the interpretation of a CBA [and] lacks independence from the CBA." *Id.* at 144 (quoting *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023)). *See Blakely v. USAirways, Inc.*, 23 F. Supp. 2d 560, 565–66 (W.D. Pa. 1998) (explaining that the RLA's preclusive effect does not sweep so broadly as to "preclude individual workers from commencing actions under federal statutes which provide entitlement to independent minimum substantive

---

[6]   OA Transcript pgs. 3-4 ("[T]here's a Third Circuit case also pending that I feel the need to call to Your Honor's attention because it bears on this issue. That case is Stouffer versus United States Steel…. The reason I mention the Stouffer case is it's currently on appeal by plaintiff to the Third Circuit. And when the case was decided by Judge Colville here in the district court, the 12(b)(1) Railway Labor Act argument was made. Judge Colville rejected that argument and found that the court did have jurisdiction, but he granted the 12(b)(6) motion that was pending in that case, that that particular complaint, which was an age discrimination complaint, was inadequately pled.").

guarantees to protected class workers."). Applying that principle in *Stouffer*, the Third Circuit determined that although the plaintiff had averred facts that would *implicate* his CBA—raising questions of, *e.g.*, whether he was wrongly subjected to working certain shifts and whether last chance agreements were improperly used to target senior employees—his ADEA claim should "not [be] barred simply because 'the action challenged by the plaintiff is arguably justified by the terms of the CBA.'" *Id.* at 146 (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014)). The court thus explained that it would affirm the district court's determination that the plaintiff's claims were not precluded by the RLA, saying "[p]ut simply, we do not need to interpret the CBA to resolve the merits of this case." *Id.*

Having considered Defendants' arguments for dismissal pursuant to Rule 12(b)(1) in light of *Stouffer*, it is the Court's determination that the claims in the SAC are not precluded by the RLA. Although the claims in this case may "involve questions of whether [Plaintiffs' employers] w[ere] justified in assessing points under the factual circumstances, or whether [they] w[ere] using the … points system to ultimately discharge Plaintiff[s]" as part of a scheme to remove CP-participants from their workforce, "[t]he dispositive question underlying … [the] claims is whether [Defendants] took particular action, *i.e.* applying [their] … polic[ies] to [Plaintiffs] unfairly by assessing unjustified points and ultimately discharging [them], because of [plan participation]." *Jackson v. United Airlines, Inc.*, 32 F. Supp. 3d 557, 564 (E.D. Pa. 2014).[7] Here, Plaintiffs are seeking to assert a right that stems from ERISA, not the CBA itself. Plaintiffs do not argue that

---

[7] *See Stouffer*, 85 F.4th at 144 ("So when does a federal claim depend on interpretation of a CBA? We agree with our sister circuits applying [*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)] that for the RLA to apply, the CBA must be more than 'relevant' to a plaintiff's claim."); *see also McCrumb*, 2022 WL 4280177, at *6 ("Here, [plaintiff] takes issue with the demerits that were assessed and maintained against him under the CBA and the Railroad's disciplinary rules and policies, as well as his termination, but his central claim is this was part of a pretextual scheme to terminate Railroad employees over age 40 on the basis of their age in violation of the ADEA. The motives of the Railroad are challenged. Given the nature of his claims herein, we will deny the motion to dismiss on the grounds of preemption.").

11

any provisions of the CBA violate ERISA, or that the CBA was improperly applied to them. Such factual questions about Plaintiffs' conduct or Defendants' motives merely necessitate references to the CBA. Interpretation of the CBA is not required. Thus, the Court does not lack jurisdiction to consider Plaintiffs' ERISA claims as they are alleged in the SAC.

      B.     <u>Plaintiffs Fail to Plausibly Allege ERISA violations</u>[8]

The Court now turns to Defendants' secondary argument that the Court should dismiss Plaintiffs' claims with prejudice pursuant to Rule 12(b)(6). Defendants argue that in this, Plaintiffs' third attempt to articulate cognizable claims, Plaintiffs' averments continue to fall short. Defendants argue that Plaintiffs' allegations that their employers violated Section 510 of ERISA are especially lacking with respect to there being any allegations to satisfy the element of specific intent. And they contend that Plaintiffs' allegations are generally conclusory. Plaintiffs argue in response that their most recent pleadings provide sufficient factual matter to support their claims that Defendants committed violations of Section 510 of ERISA because they have alleged that Defendants created a scheme to reduce pension obligations by eliminating CP participants and that Defendants acted on that plan by manipulating the demerits policy and using last chance agreements to side-step procedural protections in the CBAs, as well as threatening CP participants with punishment for raising grievances and terminating CP participants without following disciplinary policies.

Section 510 of ERISA makes it unlawful to, *inter alia*, "discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. The elements of a claim of ERISA interference in violation of 29 U.S.C. § 1140 are "(1) the employer committed prohibited conduct (2) that was taken for the

---

[8]     The Court having assured itself of its jurisdiction, notwithstanding Defendants' challenge thereto, exercises jurisdiction over the federal claims in Plaintiffs' SAC pursuant to 28 U.S.C. § 1331.

purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Stabile v. Allegheny Ludlum, LLC*, No. CIV.A. 12-168, 2012 WL 3877611, at *8 (W.D. Pa. Sept. 6, 2012) (quoting *Jakimas v. Hoffmann–LaRoche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007)). This Court previously noted that, in their FAC, Plaintiffs sought to satisfy the elements of such a claim in their pleadings by alleging that: there was a "scheme to cut costs by targeting Carnegie pension participants for termination of employment"; the "scheme was cast in order to not follow applicable disciplinary policies or to manipulate those policies and dispense more demerits to certain people as opposed to others"; CP participants were forced to "sign last chance agreements in a way that … impacts pension rights"; and Defendants failed to "timely remove prior demerit issues from files of certain pension participants." (OA Transcript, pg. 37). Considering whether those allegations in the FAC were sufficient, the Court decided that they were inadequate and noted that, in its view, "the [FAC] [did] not aver any factual allegations that specifically connects that scheme or arrangement with the named plaintiffs here" and that "there [were] no averments in the … amended complaint … that plausibly link this … cost saving strategy that's alleged in a generalized and generic way over the course of … years with the purposeful interference with pension benefits, particularly in relation to the two plaintiffs here." (*Id.*). Accordingly, the Court decided that Plaintiffs' FAC would be dismissed pursuant to Rule 12(b)(6) for failure to state ERISA interference claims. (*Id.*).

Despite that decision and the Court's specific identification of deficiencies in the FAC, Plaintiffs have not meaningfully supplemented their averments in the SAC.[9] In the FAC, Plaintiffs alleged that Paceley was terminated after an incident wherein he received sixty demerits on

---

[9] The Court notes that the SAC is significantly briefer than the FAC not because the Plaintiffs have subtracted from the factual allegations in the earlier iteration of their complaint, but because they have excised their claims against now-terminated Defendant United States Steel Corporation as is appropriate considering this Court's Order at Docket No. 54.

13

November 20, 2019, that those demerits were based on misstatements and staged photographs and that non-CP participants who were accused of similar violations were not issued sixty demerits. Likewise, in the SAC, Plaintiffs allege that Paceley was issued sixty demerits on November 20, 2019, and that he protested that non-CP participants who were accused of similar rules violations were not issued sixty demerits.  Again, Plaintiffs have alleged that GRC relied on misstatements of existing operating procedures to issue those demerits and that they further relied on staged photographs of the incident.  Similarly, concerning Prolenski, in the FAC Plaintiffs alleged that Prolenski was told that he could informally take time off to care for his wife but that he was nevertheless issued a total of 100 demerits for being late to work even though non-CP participants were never issued a similar number of demerits for lateness, and that he was falsely accused of failing a brake test.  In the SAC, these allegations are repeated: Plaintiffs again allege that Prolenski was issued demerits for lateness despite informal approval of time-off to care for his wife and that he was told he failed a new brake test upon his return from FMLA leave despite evidence showing he did not fail the test (cameras, testimony of an engineer, and his manager recanting his testimony).  And, in both the FAC and SAC, Plaintiffs attribute these actions adverse to the individually named Plaintiffs to Defendants' attempt to reduce the number of CP-participants because of the CP's cost.

As is evident from this summary of the allegations relating to the individually named Plaintiffs, the factual averments in the SAC have not remedied the deficiencies the Court previously identified in the FAC.  Plaintiffs additionally allege in the SAC that Prolenski discovered "a 125-employee list … which shows that nearly all Carnegie Pension members on that list were forced to leave or were fired due to Defendants' manipulation of the demerit system" (SAC ¶ 38), and that Paceley can provide evidence that "union documents … show that nearly all

Carnegie Pension members were forced to leave or were fired due to Defendants' manipulation of the demerit system" (SAC ¶ 39), but these allegations are too vague and conclusory to satisfy pleadings standards discussed *supra*, Section II (Standard of Review).  Accordingly, the Court will grant Defendants' motion insofar as it will dismiss the ERISA claims in Plaintiffs' SAC.  However, the Court will dismiss the claims therein without prejudice and will afford Plaintiffs one additional opportunity to amend, it not being evident to the Court that amendment would be futile.[10]

### IV.  Conclusion

For all the foregoing reasons, Defendants' motion to dismiss Plaintiffs' SAC is **granted in part and denied in part**.  The motion is granted insofar as Plaintiffs' claims are dismissed without prejudice pursuant to Rule 12(b)(6), denied to the extent that Defendants challenged this Court's subject matter jurisdiction pursuant to Rule 12(b)(1), and denied as moot with respect to Defendants' challenge arising under Rule 12(f).  An Order consistent with this Memorandum Opinion follows.

>                                           */s/ W. Scott Hardy*
>                                           W. Scott Hardy
>                                           United States District Judge

Dated:  May 3, 2024

cc/ecf:  All counsel of record

---

[10]  Because the Court will grant Defendants' motion under Rule 12(b)(6) and dismiss Plaintiffs' claims without prejudice, the Court will deny Defendants' motion pursuant to Rule 12(f) as moot.